BONCEK et al. v. PENNSYLVANIA R. CO. et al. and six other cases.

Nos. C 808, C 171, C 176, C 178-C 181.

United States District Court
D. New Jersey.

May 10, 1952.

the claim against the resident insurance company were this case removable.

Wilentz, Goldman, Spitzer & Sills, Maria Denopoulos, Perth Amboy, N. J., for James F. Boncek, and others, and Ella Abegg, and others.

Stryker, Tams & Horner, Walter F. Waldau, Newark, N. J., for American Agricultural Chemical Co.

Toner, Crowley & Ackerman, Marshall Crowley and John A. Ackerman, Newark, N. J., for A. & M. Trading Corp., and New Jersey Bell Tel. Co.

Kristeller & Zucker, Lionel P. Kristeller, Newark, N. J., for Bernard Ackerman and others, and M. & J. Tracy, Inc.

Strong & Strong, Theodore Strong, New Brunswick, N. J., for Pennsylvania R. Co.

Markley & Broadhurst, James J. Langan and Richard Dunne, Jersey City, N. J., for Baltimore & O. R. Co.

Katzenbach, Gildea & Rudner, George Gildea, Trenton, N. J., for Reading Co.

FORMAN, Chief Judge.

These proceedings are before the court on motions of plaintiffs to remand the above seven suits to the Superior Court of New Jersey. All of these suits arise out of an explosion of munitions which occurred in South Amboy, New Jersey on May 19, 1950 and are brought to recover for damages sustained to both person and property. For convenience these causes, in the order of their captions, will be referred to herein as the "Boncek", "Abegg", "Chemical", "A. & M.", "Bell", "Ackerman" and "Tracy" cases.

For purposes of this motion the Boncek and Abegg cases may be treated as one, since the substantive allegations of each

complaint are identical and the parties defendants the same, and the Chemical, A. & M., Bell, Ackerman and Tracy cases likewise may be treated as one case for the same reasons.

### Boncek and Abegg Cases.

In the Boncek case the 114 plaintiffs suing for personal injuries, etc. are all citizens of New Jersey, except one who is a citizen of New York. In the Abegg case there are 394 property damage claimants, all of whom are citizens of New Jersey with the exception of 14 plaintiffs who are citizens of New York. Of the 29 defendants, 16 were served, and of these 9 are citizens of New Jersey and 7 are nonresidents. The removing defendants, Pennsylvania Railroad Company and Reading Company, are Pennsylvania corporations and the Baltimore & Ohio Railroad is a Maryland corporation.

The complaints charge liability on the part of the defendants in the following manner. In individual counts each defendant by its negligence is alleged to have caused and contributed to the explosion. Also, in individual counts each of the defendants is alleged to have maintained, contributed to the maintenance of, and conspired with others to maintain such a large quantity of explosive substances in the vicinity of dwelling houses and places of business and in such proximity to highly concentrated areas of human habitation as to constitute a nuisance contrary to and in violation of the laws of New Jersey. In addition, in two counts all defendants are charged with negligence, jointly and severally, and jointly and severally maintaining, etc., a nuisance.

Each of the removing defendants bases its right to removal on 28 U.S.C. § 1441 upon the ground that each of the counts specifically addressed to them respectively constitute a separate and independent claim or cause of action as between each individual plaintiff and itself, from any other cause of action in said complaints which, by reason of diversity of citizenship and requisite jurisdictional amount, entitles it to removal under the aforesaid statute. The defendants also alleged that each suit is "a civil action of which the district courts of the United States have original jurisdiction and the same has not arisen or been instituted under Sections 51–60 of Title 45 of the United States Code."

### Chemical, A. & M., Bell, Ackerman and Tracy Cases.

In the Chemical case the plaintiff is a citizen of Delaware. In the A. & M. case approximately 7,100 persons and corporations are plaintiffs who are alleged by the removing defendants, to be citizens of New Jersey, New York and Delaware. The plaintiff in the Bell case is a citizen of New Jersey. The 333 plaintiffs in the Ackerman case are citizens of New Jersey, and in the Tracy case the plaintiff is a citizen of New York.

In each suit there are 13 individual defendants, 5 of whom have been served and are citizens of New Jersey. In addition there are 11 corporate defendants in each suit, of whom 3 have been served. These corporate defendants include one New Jersey, one Maryland, two Pennsylvania, two Delaware and two New York citizens (of which one has moved to set aside service of process).

Each of the complaints contains six counts and all of the defendants are parties to each count. The first count alleges that the explosion and resulting losses and damages were caused by the negligence, "jointly and severally", of the defendants; the second count alleges the fault, "jointly and severally", of the defendants in maintaining and creating a nuisance in violation of the laws of New Jersey; the third count alleges the liability of "defendants and each of them" for the losses and damages arising from the explosion which resulted from and was caused by their carrying on of an extra-hazardous business venture for profit; the fourth count alleges the liability of "defendants and each of them" under the provisions of an ordinance of the City of South Amboy; the fifth count alleges the "joint and several" negligence of the defendants in manufacturing, packing, handling, transporting, and otherwise dealing with said explosives contrary to and in violation of the applicable statutes and regulations of the United States, the

State of New Jersey and the City of South Amboy; the sixth count alleges that the "defendants and each of them" by said explosion trespassed against the property of the plaintiffs.

The removing defendants, Pennsylvania Railroad Company and Reading Company, base their right to remove these suits to the Federal Courts under 28 U.S.C. § 1441 upon the same grounds as in their petition for removal in the Boncek and Abegg cases, viz., the complaints contain separate and independent claims or causes of actions against each of them which by reason of diversity of citizenship and amounts involved entitle them to removal under the statute, and the action is one over which the district courts of the United States have original jurisdiction.

### Discussion.

The right of removal in these cases is predicated upon 28 U.S.C. § 1441, which states:

"(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

"(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

"(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may

determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

Admittedly, as to the claims of, at least, some of the plaintiffs in all of the cases against the removing defendants, this court would have had original jurisdiction on the basis of diversity of citizenship and amounts involved if these defendants had been sued individually. But, I cannot agree that the claims or causes of action alleged against them are separate and independent from the claims or causes of action alleged against all the other defendants. The defendants do not apparently press this contention with respect to the Chemical and four related cases presumably because all defendants are joined in each count of these complaints and their liability arising out of the single accident, namely, the explosion, is asserted as being "joint or several" or some variation thereof. However, it is urged that the state of pleadings in the Boncek and Abegg cases compel a different result since there are counts in these complaints where the liability of the removing defendants is asserted individually and which therefore constitutes a "separate and independent" claim. Whatever may have been the status of such a claim as a *separable* controversy prior to September 1, 1948, the effective date of the revision of the Judicial Code, the test for removability under the present statute is different. See Board of Education of the Township of Marlboro v. Hartford Fire Insurance Co., D.C., 105 F.Supp. 697.

All the plaintiffs in these actions suffered property damage or personal injuries or both as the result of the explosion. Each plaintiff alleges but a single wrong for which it seeks relief, the failure to pay compensation for the loss and damage to person and property. Liability is alleged against the various parties as arising from an interlocked series of acts and all are made defendants in one suit. In the 57th and 58th counts of the Boncek and Abegg complaints there are even allegations that these defendants "jointly and severally" were negligent and participated

in the maintenance of a nuisance, which acts and omissions culminated in the explosion. These two counts, in effect, incorporate the first 56 counts with the additional aspect of alleging "joint liability" and are indicative of the fact that each count relates to the unlawful violation of the same right. Whatever, may be the effect of pleading claims in separate counts under the New Jersey Rules of Civil Practice [1] as urged by the defendants, it cannot be conclusive in determining the jurisdiction of the federal courts. However, an allegation of "joint" liability is not a sine qua non in determining that the individual counts in these complaints are not "separate and independent" claims. This conclusion is supported by the language of the United States Supreme Court in American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702, where the meaning and effect of § 1441(c) is construed. In discussing the meaning of "cause of action" as used in that section the Court quoted from an earlier decision in Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L. Ed. 1069, as follows:

" 'Upon principle, it is perfectly plain that the respondent suffered but one actionable wrong and was entitled to but one recovery, whether his injury was due to one or the other of several distinct acts of alleged negligence or to a combination of some or all of them. In either view, there would be but a single wrongful invasion of a single primary right of the plaintiff, namely, the right of bodily safety, whether the acts constituting such invasion were one or many, simple or complex.

" 'A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show.' " 341 U.S. at page 13, 71 S.Ct. at page 539, 95 L.Ed. 702.

Following this definition, Justice Reed said:

"Considering the previous history of 'separable controversy,' the broad meaning of 'cause of action,' and the congressional purpose in the revision resulting in 28 U.S.C. § 1441(c), 28 U.S.C.A. § 1441(c), we conclude that where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." 341 U.S. at pages 13–14, 71 S.Ct. at page 540, 95 L.Ed. 702. The Court further asserted:

"In making this determination we look to the plaintiff's pleading, which controls. Pullman Co. v. Jenkins, 305 U.S. 534, 538, 59 S.Ct. 347, 349, 83 L.Ed. 334. The single wrong for which relief is sought is the failure to pay compensation for the loss on the property. Liability lay among three parties, but it was uncertain which one was responsible. Therefore, all were joined as defendants in one petition." 341 U.S. at page 14, 71 S.Ct. at page 540, 95 L.Ed. 702.

Defendants contend, however, that this latter excerpt holds that the plaintiffs are bound by their pleadings. When considered in context it is evident that the Court, in its test of a "separate and independent" claim, was referring to a determination of whether there existed "a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions", and not to the mere form of plaintiffs' pleadings. This view is reinforced by the inclusion, with apparent approval by the Court, of the following footnote:

"Moore's Commentary on the U. S. Judicial Code, supra, pp. 251–252: 'But where the plaintiff joins two or more defendants to recover damages for one injury, and even though he charges them with joint and several liability or only several liability, or charges them with liability in the al-

[1] "Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever

a separation facilitates the clear presentation of the matters set forth." Rule 3:10–2.

ternative, there is no joinder of separate and independent causes of action within the meaning of § 1441(c). At most a separable controversy is presented where several or alternative liability is alleged, and is no longer the basis for removal.' Compare the opinion in Bentley v. Halliburton Oil Well Cementing Co., D.C., 81 F.Supp. 323, with the reversing opinion in 5 Cir., 174 F.2d 788." 341 U.S. at page 14, 71 S.Ct. at page 540, 95 L.Ed. 702.

■ The application of the criteria expounded in the Finn case when applied to the instant situation must compel the conclusion that none of the claims against the removing defendants are "separate and independent" from non-removable claims against other defendants.[2] See also Mayflower Industries v. Thor Corp., 3 Cir., 1950, 184 F.2d 537, certiorari denied 1951, 341 U.S. 903, 71 S.Ct. 610, 95 L.Ed. 1342; Board of Education of the Township of Marlboro v. Hartford Fire Insurance Co., supra.

As a further basis for removal defendants contend that this court has original jurisdiction of these suits since they are founded on claims arising under an Act of Congress regulating commerce [3] and that such suits are removable under § 1441(b) without regard to the citizenship or residence of the parties. With particularity they refer to the fifth count of the complaints in the Chemical and related cases, supra, which alleges the negligence of the defendants in manufacturing, dealing, etc. with explosives "contrary to and in violation of the applicable statutes and regulations of the United States and the State of New Jersey and applicable municipal ordinances, including among others the duly promulgated regulations of the United States Coast Guard set forth in 46 Code of Federal Regulations, Sections 142 through 146, inclusive, and 49 Code of Federal Regulations, Section 73; Title 21 of the Revised Statutes of New Jersey, as amended and supplemented; and an ordinance of the City of South Amboy, dated March 13, 1917, regulating the manufacture, storing, handling, transfer, and transportation of explosives within the City of South Amboy." In addition the defendants contend that proposed amendments to the complaints in the Boncek and Abegg cases with reference to the allegations of negligence similarly indicate that they obviously present claims arising under Acts of Congress and that it is immaterial that specific reference to such laws may be omitted in the pleadings since this court may take judicial notice of any federal laws necessarily brought into play by the allegations of the complaint. Cf. John Hancock Mutual Life Ins. Co. v. United O. & P. Workers, D.C., 1950, 93 F.Supp. 296, 304.

■ How and when a case arises under the Constitution or laws of the United States has been extensively considered and discussed in many cases.[4] Certain tests, however, are well established and were succinctly enunciated by Justice Cardozo in Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 97, 81 L.Ed. 70, a much cited, and the leading, case on this subject.

"To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. [Cases cited.] The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeat-

2. In addition to the lack of diversity of citizenship between the plaintiffs and some of the defendants, all suits involve New Jersey defendants, a fact which precludes removal under § 1441(b) in diversity cases.

3. "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337.

4. This court concerned itself with the problem in Driscoll v. Burlington-Bristol Bridge Co., D.C., 1949, 83 F.Supp. 975 and John Hancock Mutual Life Ins. Co. v. United O. & P. Workers, D.C., 1950, 93 F.Supp. 296.

ed if they receive another. [Cases cited.] A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto * * *.

" * * * Partly under the influence of statutes disclosing a new legislative policy, partly under the influence of more liberal decisions, the probable course of the trial, the real substance of the controversy, has taken on a new significance. *'A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends.'* (Cases cited.) * * Today, even more clearly than in the past, *'the federal nature of the right to be established is decisive—not the source of the authority to establish it.'*" 299 U.S. at pages 113, 114, 57 S.Ct. at pages 97, 98, 81 L.Ed. 70. (Italics added.)

■ Applying this test to the complaints in question and under the decisions dealing with the subject of what constitutes a federal question in cases involving both original jurisdiction and removal of causes, it is my view that the elements of federal jurisdiction are not present in these cases.

■ The gravamen of the claims in these suits is that the negligence of the defendants caused the explosion which resulted in damage to the plaintiffs. It is true that one of the charges of negligence embraces a failure to comply with federal statutes and regulations prescribed for the handling, transportation, etc. of explosives. But no recovery is sought under and by virtue of the terms of any federal statutes or regulations. The right of action for the breach of such duty (if we assume that Congress by such statutes and regulations prescribed absolute duties and created correlative rights in favor of

injured persons) was created by and enforceable under the laws of the State of New Jersey, and does not really and substantially involve a controversy respecting the validity or construction of a law of the United States upon the determination of which the result depends. The violation of a federal statute or regulation or of any penal statute is not negligence per se under the law of New Jersey but a mere incidence of negligence which may be considered in determining whether there was negligence conclusively shown. Rizzolo v. Public Service Co-ordinated Transport, 111 N.J.L. 107, 111, 166 A. 456.

A case in point is Andersen v. Bingham & G. Ry. Co., 10 Cir., 1948, 169 F.2d 328, 14 A.L.R.2d 987. In this case an action was instituted in a state court against a railway company to recover damages for personal injuries sustained as a result of a collision between an automobile driven by the plaintiff and a train operated by defendant. The complaint alleged that the defendant was engaged in the business of a common carrier in interstate commerce, and that the injuries to the plaintiff arose in the course of such business. The complaint further alleged ten separate grounds of negligence proximately causing the accident and resulting injuries. One ground was that in violation of section 1 of the Safety Appliance Act, as amended, 45 U.S.C.A. § 1, the defendant operated in interstate commerce the train in question consisting of an engine and fifteen cars equipped with brakes that would not and could not retard or control the speed of the train when operated by the engineer in the usual and ordinary manner, and that because of the inefficiency and inadequacy of the brakes the engineer was unable to decrease the speed of the train or bring it to a stop when to do so would have averted the accident with its resulting injuries. The defendant caused the case to be removed to the United States District Court for Utah on the ground that it was a suit of a civil nature arising under and by virtue of the Safety Appliance Act, and that more than $3,000 exclusive of interest and costs was involved. Plaintiff filed a

motion to remand the case to the state court on the ground that it was not one arising under the Constitution or laws of the United States and that it was not removable. The court denied the motion to remand, and after judgment for plaintiff both parties appealed. The Court of Appeals for the Tenth Circuit reversed and ordered the case remanded to the state court. The court first discussed the general test enunciated in the Gully case and then added:

"The primary Congressional purpose in the enactment of the Safety Appliance Act was to protect employees and passengers, but the act imposes upon carriers duties with respect to brakes which are broad enough to bring within their purview protection of travelers at crossings. (Cases cited.) *While it prescribes absolute duties and creates correlative rights in favor of injured persons, it does not attempt to lay down rules governing actions for enforcing such rights. Instead, it leaves the nature, incidents, and regulation of the remedy to the law of the states. An action by a traveler on the highway for damages growing out of the failure of a carrier to comply with the provisions of the Act does not take its origin in the laws of the United States. An action of that kind has its genesis and regulation in the law of the state, either statutory or common law.* * *

"The allegations in the complaint charging as an element of negligence failure on the part of the defendant to comply with the exactions of the Safety Appliance Act merely tendered the issue of fact whether the train was operated without brakes being in operative condition as required by the Act. * * * It does not set forth any right or immunity which would be supported if the Act be given one construction or effect and defeated if given another. *While the pertinent provisions of the Act lurked in the background as creating a duty the*

*breach of which constituted negligence, the right of action available and the incidence of such right of action sprang from the law of Utah. It did not arise under the laws of the United States."* 169 F.2d at pages 330, 331. (Italics added.)

Judge Smith of this court in dismissing an action for lack of jurisdiction in Bullock v. U. S., D.C., 72 F. Supp. 445, 446, as one not arising under " 'a law regulating interstate and foreign commerce' " made this apposite statement:

"It clearly appears from the specific allegations of the complaint that this is the ordinary tort action in which the local law is determinative of both the rights of the plaintiffs and the liability of the defendant. The Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq., Part II of the Interstate Commerce Act, upon which the plaintiffs predicate the jurisdictional allegation, vests no right of action in plaintiffs and imposes no liability upon the defendant, except the usual obligation to comply with its provisions and the regulations promulgated thereunder. This is, therefore, not an action arising under either a law of the United States or a law regulating commerce. Gully v. First National Bank, 299 U. S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Hull v. Burr, 234 U.S. 712, 34 S.Ct. 892, 58 L.Ed. 1587; Shulthis v. McDougal, 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205; Toledo, P. & W. R. R. v. Brotherhood of R. R. Trainmen, etc., 7 Cir., 132 F.2d 265; Viles v. Symes, 10 Cir., 129 F.2d 828; Gardner v. Schaffer, 8 Cir., 120 F.2d 840; Isaac Kubie Co. v. Lehigh Valley R. Co., D.C., 261 F. 806." 72 F.Supp. at page 446.

In support of their position, defendants cite the case of Actiesselskabet Ingrid v. Central R. Co. of N. J., 2 Cir., 1914, 216 F. 72, 82, L.R.A.1916B, 716, for the proposition that the federal law exclusively controls shipments of explosives in interstate commerce. However, the statement

708

in the case to that effect was not made with reference to the jurisdiction of the federal court, the suit being in admiralty, but pertains merely to the question of whether the failure to comply with the requirement of the law of the State of New Jersey and with municipal regulations in respect to the storage of explosives, constituted an incidence of negligence, the libel having been dismissed by the district court for failure to prove that the respondents committed any wrongful act which caused the explosion.

Defendants also cite Neiswonger v. Goodyear Tire & Rubber Co., D.C.N.D. Ohio, 1929, 35 F.2d 761 for its holding that the federal court had jurisdiction of, a suit as arising under the laws of the United States where damages were sustained when plaintiffs' horses were frightened by a low flying dirigible which was operated in violation of air traffic rules established under the Air Commerce Act of 1926, 49 U.S.C.A. § 171 et seq. Although the opinion of that court would indicate that its holding was not conditioned upon any peculiarities that might be inherent in air navigation, it suffices to say that it represents a minority view and it preceded the holdings in the Gully case and Puerto Rico v. Russell & Co., 1938, 288 U.S. 476, 53 S.Ct. 447, 450, 77 L.Ed. 903, which declared that "the federal nature of the right to be established is decisive—not the source of the authority to establish it." See Annotation, 12 A.L.R.2d, 39–41.

In their arguments and briefs supporting their motions to remand, plaintiffs raised several other points,[5] which it will not be necessary to discuss in view of the above holdings that these cases must be remanded to the State courts.

Orders to remand all cases should be submitted.

5. For example, plaintiffs contend that even if the fifth count of the complaint in the Chemical and related cases involves a federal question, the claims therein stated are not separate and independent claims or causes of action from the other non-removable claims and therefore not removable under 28 U.S.C. § 1441(c). See Cyclopedia of Federal Procedure (3d ed.) Vol. II, § 3.67, p. 278; Barron and Holtzoff, Federal Practice and Procedure, 1950, Vol. I, § 105, p. 188; cf. Note, 52 Columbia L.R. 101, 110 (1952).